POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT OSTRANDER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TERADATA CORPORATION, STEPHEN MCMILLAN, and CLAIRE BRAMLEY, <br><br> Defendants. | Case No. __'24 CV 1034 BAS MSB__ <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Vincent Ostrander ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

1

Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Teradata Corporation ("Teradata" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Teradata securities between February 13, 2023 and February 12, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Teradata, together with its subsidiaries, provides a connected multi-cloud data platform for enterprise analytics. Historically, Teradata primarily dealt with the information technology ("IT") departments of its customers. However, as

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the Company expanded its business model and strategic objectives, it increasingly began to engage with additional customer business units.

3.  To measure the Company's progress in achieving its strategic objectives, Teradata utilizes certain financial and performance metrics including Total Annual Recurring Revenue ("ARR")—or the annual value at a point in time of all recurring contracts, including subscription, cloud, software upgrade rights, and maintenance—and, included within Total ARR, Public Cloud ARR—or the annual value at a point in time of all contracts related to public cloud implementations of its cloud data platform.  Accordingly, Teradata's Total ARR for a certain time period is determined, in significant part, by the number of customer transactions the Company is able close in that period.

4.  On February 13, 2023, Teradata issued a press release reporting its Q4 and full year 2022 financial results.  In providing an outlook for the full-year 2023, the press release stated that "Public cloud ARR is expected to increase in the range of *53% to 57%* year-over-year" and "Total ARR is expected to increase in the range of *6% to 8%* year-over-year."[1]

5.  Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading

---

[1] All emphases included herein are added unless otherwise indicated.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

statements and/or failed to disclose that: (i) under Teradata's expanded business model, which involved engagement with additional customer business units and decisionmakers, transactions with the Company's customers took longer to finalize; (ii) Teradata thus overstated its ability to close customer transactions within their intended timeframes under its expanded business model; (iii) Terada failed to timely close several customer transactions that it had factored into its outlook for 2023 ARR growth; (iv) as a result, the Company was unlikely to meet its full year 2023 Total and Public Cloud ARR expectations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On December 7, 2023, at a Barclays Global Technology Conference (the "Barclays Conference") Teradata's Chief Financial Officer ("CFO") Defendant Claire Bramley ("Bramley") revealed that the Company had "an eight-figure deal that **potentially** [. . .] could get pushed out [of Q4 2023]", the effect of which "**could** put [the Company] towards the low end or slightly below the range for cloud ARR that [it] previously gave."

7.     On this news, Teradata's stock price fell $2.89 per share, or 6.24%, to close at $43.40 per share on December 7, 2023.

8.     Then, on February 12, 2024, Teradata announced its Q4 and full year 2023 financial results. Among other things, the Company stated that due to "deal timing issues" public cloud ARR increased by only **48%** and total ARR increased

by only *6%* for the full year 2023, falling well short of the Company's previously issued expectations for these performance metrics.

9.      On a conference call held that same day to discuss the Company's Q4 and full year 2023 results (the "Q4 2023 Earnings Call"), Teradata's Chief Executive Officer ("CEO") Defendant Stephen McMillan ("McMillan") confirmed that the "deal timing issues" related to the Company's failure to timely finalize certain transactions that would have contributed to full year ARR growth if they had been closed in 2023. Specifically, Defendant McMillan claimed that because "Teradata is becoming even more strategic to corporations and touching all levels of [its] customers' organizations," there were "more executive decision makers" required to close these deals and that "[t]hese dynamics cause a number of transactions to move into 2024." As a result, Defendant McMillan revealed that "there was a handful of large deals that slipped out of December [2023] and each were worth *$2 million or more of cloud ARR growth*."

10.      On this news, Teradata's stock price fell $10.57 per share, or 21.66%, to close at $38.22 per share on February 13, 2024.

11.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).   Teradata is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

15.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

16.     Plaintiff, as set forth in the attached Certification, acquired Teradata securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant Teradata is a Delaware corporation with principal executive offices located at 17095 Via Del Campo, San Diego, California 92127.  Teradata's

6

common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "TDC".

18. Defendant McMillan has served as Teradata's President, CEO, and Director at all relevant times.

19. Defendant Bramley has served as Teradata's CFO at all relevant times.

20. Defendants McMillan and Bramley are sometimes referred to herein as the "Individual Defendants."

21. The Individual Defendants possessed the power and authority to control the contents of Teradata's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Teradata's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Teradata, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Teradata, together with its subsidiaries, provides a connected multi-cloud data platform for enterprise analytics.  Historically, Teradata primarily dealt with the IT departments of its customers.  However, as the Company expanded its business model and strategic objectives, it increasingly began to engage with additional customer business units.

23.     To measure the Company's progress in achieving its strategic objectives, Teradata utilizes certain financial and performance metrics including Total ARR—or the annual value at a point in time of all recurring contracts, including subscription, cloud, software upgrade rights, and maintenance—and, included within Total ARR, Public Cloud ARR—or the annual value at a point in time of all contracts related to public cloud implementations of its cloud data platform.   Accordingly, Teradata's Total ARR for a certain time period is determined, in significant part, by the number of customer transactions the Company is able close in that period.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on begins on February 13, 2023, when the Company issued a press release announcing the Company's Q4 and full year 2022 financial results.  The press release stated, in relevant part:

"Teradata had a strong 2022, including achieving our largest quarter of cloud growth ever, and meeting or beating every element of our annual outlook," said [Defendant] McMillan[.] "It was only in the middle of 2020 that we set our sights on our cloud-first future. In that short amount of time, and despite challenging macroeconomic factors, Teradata delivered more than a six-fold growth in cloud ARR. It's clear that our strategic transformation is right for the market, and the proof is in both our financial results and the continued recognition of Teradata as a leader in cloud data and analytics."

"Teradata's increase of its return of free cash flow target to 75% from 50% demonstrates our conviction in the durability of our free cash flow and commitment to deliver ongoing shareholder value," said [Defendant] Bramley[.] "***We are energized to continue our momentum into 2023, accelerating our growth forecasts for ARR, revenue, and earnings per share. We remain on-track to achieve over one billion dollars of cloud ARR in 2025 while driving future margin expansion and free cash flow growth***."

\*\*\*

**Outlook**

For the full-year 2023:

- Public cloud ARR is expected to increase in the range of **53% to 57%** year-over-year

- Total ARR is expected to increase in the range of **6% to 8%** year-over-year[.]

25.    That same day, Teradata hosted an earnings call with investors and analysts to discuss the Company's Q4 2022 results (the "Q4 2022 Earnings Call"). During the scripted portion of the Q4 2022 Earnings Call, Defendant McMillan stated, in relevant part:

When we win, we increasingly win with partners, and we continue to strengthen our partner-first approach. In 2022, we made major strides

9

building out our partner motion; significantly advancing our capabilities, training thousands of partner employees, and building a leading partner-centric organization from the ground up.

Our robust cloud growth is intrinsically tied to the deep partnerships our teams have built with the leading cloud service providers, systems integrators, ISVs, and resellers. In fact, 75% of our largest cloud deals were won in partnership with key systems integrator partners and cloud service providers. Looking ahead, we remain committed to partnering as a key element in our growth. We will continue to invest in building deep partnerships and accelerating market momentum in this area.

26.     On February 24, 2023, Teradata filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2022 (the "2022 10-K").  In providing an overview of the Company's strategy, the 2022 10-K included in its list of "strategic objectives": "expand our go-to-market reach by onboarding new customers, making vertical investments, expanding customer success programs, and strengthening our partner relationships" and "deliver operational excellence through efficient cost management and execution."

27.     Further, in discussing the Company's sales, marketing, customer services and partners, the 2022 10-K stated, in relevant part:

**Customer Services**. Our global customer services organization is dedicated to creating and sustaining an optimal customer experience, *while driving predictable growth in annual recurring revenue*. This organization focuses on ensuring that Teradata delivers business value and enables innovative use of our platform—ultimately retaining and driving greater consumption of our technology.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     Appended to the 2022 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, attesting that "the information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     On May 4, 2023, Teradata issued a press release announcing the Company's Q1 2023 financial results.  The press release stated, in relevant part:

> "Teradata is off to a strong start in 2023 with sequential growth in total ARR, and we closed one of the largest deals in Teradata's history…tangible proof points of our cloud-first strategy in action," said [Defendant] McMillan[.] "Customers are expanding their cloud environments, underscoring the power of the Teradata platform, and driving demand for our differentiated analytics. We are excited for the year ahead and are on track to achieve all elements of our annual outlook."
>
> ***
>
> For the full year 2023, Teradata re-affirms the following outlook elements:
>
> - Public cloud ARR is expected to increase in the range of ***53% to 57%*** year-over-year
>
> - Total ARR is expected to increase in the range of ***6% to 8%*** year-over-year[.]

30.     That same day, Teradata hosted an earnings call with investors and analysts to discuss the Company's Q1 2023 results (the "Q1 2023 Earnings Call"). During the scripted portion of the Q1 2023 Earnings Call, Defendant McMillan stated, in relevant part:

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Teradata is off to a great start in 2023, building on our market momentum. We achieved another quarter of robust cloud growth driven primarily by expansion activity. Our cloud ARR was up 89% year-on-year in constant currency, and we also experienced solid sequential dollar growth. We delivered on key financial metrics in the quarter and we continued to strengthen our position as a cloud leader. We also accelerated our growth in total ARR to $1.506 billion, growing both sequentially and year-over-year. We experienced our highest sequential growth in Q1 in more than 5 years.

\*\*\*

You've heard me say we meet customers where they are and help them seamlessly get to a better, more efficient and more competitive place. Our results reflect the market need in an open and connected approach. Our teams are demonstrating the ability to be relevant and remain resilient in driving total ARR and cloud ARR growth at scale in the uncertain economic environment. Our technology continues to garner kudos as it outpaces the competition and our customers are building and growing their analytic futures on Teradata.

Our Q1 performance gives us significant confidence in the year ahead. We are committed to our outlook for 2023, and we remain on track to achieve our fiscal 2025 target of more than $1 billion in cloud ARR.

31.    On August 7, 2023, Teradata issued a press release announcing the Company's Q2 2023 financial results. The press release stated, in relevant part:

"Our broad-based momentum across the business generated strong financial results, including 77% Cloud ARR growth, 10% increase in Total ARR growth and EPS that exceeded our guidance", said [Defendant] McMillan[.] "We are pleased with the strong adoption and growth of Teradata VantageCloud, as customers see that our complete cloud analytics and data platform is differentiated and generates value in this new world of AI."

\*\*\*

For the full year 2023, Teradata re-affirms the following outlook elements:

- Public cloud ARR is expected to increase in the range of *53% to 57%* year-over-year

- Total ARR is expected to increase in the range of *6% to 8%* year-over-year[.]

32.    That same day, Teradata hosted an earnings call with investors and analysts to discuss the Company's Q2 2023 results (the "Q2 2023 Earnings Call"). During the scripted portion of the Q2 2023 Earnings Call, Defendant McMillan stated, in relevant part:

I am pleased that the organization is making progress in many key areas of the business. In the second quarter we accelerated total ARR growth increasing 10% year-on-year as the team executed well on the profitable growth cloud strategy.

We brought in another quarter of strong growth with public cloud ARR growing 77% year-on-year. As customers migrate to the cloud with Teradata, we see them expanding workloads and use cases as they realize business results from our Teradata Vantage Cloud Analytics and Data platform. Our trailing 12-month cloud net expansion rate was 121% in Q2, up from 119% with large expansions coming from across various industry verticals with financial services, healthcare and telecommunications leading the way.

\*\*\*

Our broad based momentum across the business and our ongoing technology innovation and industry recognition as a leading cloud analyzing data platform and better partners, this momentum paired with our financial discipline all led to our non-GAAP earnings per share of $0.48 beating the high end of our guidance range. I'm really proud of the execution across the board. We're delivering on our commitments and are confident in our strategy.

33.    On November 6, 2023, Teradata issued a press release announcing the Company's Q3 2023 financial results.  The press release stated, in relevant part:

13

"Our best-in-class cloud analytics and data platform for AI delivers harmonized data, trusted AI, and faster innovation for better decision-making," said [Defendant] McMillan[.] "We are pleased with our financial results, execution across the organization, and with the innovations we've been able to deliver."

"I am pleased by the company's consistent execution, resulting in a solid set of financial results that were led by 63% growth in Cloud ARR and 10% growth in recurring revenue," said [Defendant] Bramley[.]

***

For the full year 2023, Teradata re-affirms the following outlook elements:

- Public cloud ARR growth of **53% to 57%** year-over-year

- Total ARR growth of **6% to 8%** year-over-year[.]

34.    That same day, Teradata hosted an earnings call with investors and analysts to discuss the Company's Q3 2023 results (the "Q3 2023 Earnings Call"). During the scripted portion of the Q3 2023 Earnings Call, Defendant McMillan stated, in relevant part:

We grew cloud ARR 63% year-on-year against a very strong Q3 last year. We grew cloud ARR in all regions through a balance of migrations and expansions. Cloud ARR is now 30% of total ARR, up 10 percentage points year-over-year. Our cloud net expansion rate was 123%. We are seeing continued strong interest and pipeline growth in VantageCloud Lake. With execution across the organization, our continued market momentum and disciplined cost management. We delivered non-GAAP earnings per share of $0.42, which grew 38% year-over-year. I am proud of the team's performance, and I'm very pleased with our innovation that position Teradata to lead in AI and particularly trusted AI.

***

14

> We will continue to take actions like winding down our direct operations in China that will accelerate our growth trajectory and advance our innovation engine. We're on track to achieve our 2023 outlook. We're looking ahead to 2024 with optimism and are firmly on track to achieve our target of more than $1 billion of cloud ARR by the end of 2025.

35. Further, during the Q&A portion of the Q3 2023 Earnings Call, when asked to discuss plan migrations—or the process of planning and executing a transition of IT infrastructure, applications, and data from one environment to another—in the fourth quarter of 2023, Defendant McMillan responded, in relevant part:

> Yes, it was a great quarter in Q3, good execution across the entire business and a really good balance of migration and expansion activity in Q3. We expect that to continue in terms of that balance between migration and expansion activities in Q4. And to your point, we have very good line of sight into execution for Q4, *and a pipeline of deals that supports that 2023 outlook, driven by both migrations and expansions. As you can imagine, the migrations tend to be larger deals within the pipeline and we've got a number of 7-figure and 8-figure deals in the Q4 pipeline*.

36. The statements referenced in ¶¶ 24-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) under Teradata's expanded business model, which involved engagement with additional customer business units and decisionmakers, transactions with the Company's customers took longer to finalize;

15

(ii) Teradata thus overstated its ability to close customer transactions within their intended timeframes under its expanded business model; (iii) Terada failed to timely close several customer transactions that it had factored into its outlook for 2023 ARR growth; (iv) as a result, the Company was unlikely to meet its full year 2023 Total and Public Cloud ARR expectations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

37.     In addition, throughout the Class Period, Teradata's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.   Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required the Company to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose that Teradata's expanded business model resulted in the delayed closing of numerous customer transactions that would have factored into 2023 ARR growth violated Item 303 because this issue represented known trends and uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Emerges

38.     On December 7, 2023, while speaking at the Barclays Conference, Defendant Bramley was asked to discuss the Company's observations for Q4 2023. In response, Defendant Bramley stated, in relevant part:

16

For the current quarter, we did have a strong October, actually both from a linearity standpoint for cloud total ARR and free cash flow. We give regular updates as you'd expect, and actually new information that we've had in the last 24 to 36 hours is that some of -- as I mentioned about elongation of deals, we've got one particular deal that **_potentially_** could be pushed out of Q4. We always have plusses and minuses, and normally we have coverage in our guide. At Q3 earnings, I talked about due to currency impact, we'll be towards the low end of our range.

I think we've got one I would say large deal which is kind of an 8-figure deal. It's kind of the low end of 8 figures, but an 8-figure deal that **_potentially_** the timing of that could get pushed out. And it's mainly, again, not competitive pressure, not issues we expect to close it, but they at the customer have -- are seeing corporate development action type activity. From a timing standpoint, they're just looking for new timing. That obviously **_could_** put us towards the low end or slightly below the range for cloud ARR that we previously gave. But the good news is that it's not a lost deal. It just rolls over into 2024. And we're still on track for our 2025 goals which is the $1 billion as well. It's good news in the sense of it's just a timing, but potentially an impact to our Q4 range that we gave.

Other than that, the usual plusses and minuses that go through the quarter. It doesn't -- I'm not seeing any issues with free cash flow, revenue, profitability, or anything like that, so a pretty isolated instance, but something that we are seeing at the moment.

39.     On this news, Teradata's stock price fell $2.89 per share, or 6.24%, to close at $43.40 per share on December 7, 2023.

40.     Then, on February 12, 2024, Teradata issued a press release announcing the Company's Q4 and full year 2023 financial results.  The press release stated, in relevant part:

**Full-Year 2023 Financial Highlights Compared to Full-Year 2022**

- Public cloud ARR increased to $528 million from $357 million, **_an increase of 48%_** as reported and 46% in constant currency []

17

- Total ARR increased to $1.570 billion from $1.482 billion, ***an increase of 6%*** as reported and 5% in constant currency[]

41.     That same day, Teradata hosted the Q4 2023 Earnings Call.  During the scripted portion of the Q4 2023 Earnings Call, Defendant McMillan confirmed that the Company's disappointing ARR results related to the Company's failure to timely finalize certain transactions in Q4 2023, stating, in relevant part:

> ***Despite a year of solid progress on our strategic and financial milestones, we ended the year below our 2023 outlook for cloud and total ARR. This was primarily due to deal timing issues.*** Let me explain. We are seeing that Teradata is becoming even more strategic to corporations and touching all levels of our customers' organizations. For example, we have historically dealt primarily with IT. Over time, we have moved beyond IT with multiple business units now relying on Teradata. This brings in more executive decision makers, including the Board, in order to close the deal. These dynamics cause a number of transactions to move into 2024. ***Of these, there was a handful of large deals that slipped out of December and each were worth $2 million or more of cloud ARR growth. This includes the low 8-figure deal Claire mentioned at an investor conference in December***. We are already taking actions to address the miss in the ARR expectations we had set. We have reviewed the root causes of each slip. Our teams are executing plans to address each unique customer situation and are diligently working to close the majority of these deals in 2024. To be clear, we had uncertainty in timing, not uncertainty in demand.

42.     On this news, Teradata's stock price fell $10.57 per share, or 21.66%, to close at $38.22 per share on February 13, 2024.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

44.     Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Teradata securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Teradata securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

Class.   Record owners and other members of the Class may be identified from records maintained by Teradata or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Teradata;

- whether the Individual Defendants caused Teradata to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the prices of Teradata securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

51.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Teradata  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Plaintiff and members of the Class purchased, acquired and/or sold Teradata securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various

22

untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Teradata securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Teradata securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Teradata securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Teradata's finances and business prospects.

58.     By virtue of their positions at Teradata, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of

23

the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Teradata, the Individual Defendants had knowledge of the details of Teradata's internal affairs.

60.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Teradata.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Teradata's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Teradata securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Teradata's business and

24

financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Teradata securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

61.     During the Class Period, Teradata securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Teradata securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Teradata securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Teradata securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

25

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

64.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, the Individual Defendants participated in the operation and management of Teradata, and conducted and participated, directly and indirectly, in the conduct of Teradata's business affairs.  Because of their senior positions, they knew the adverse non-public information about Teradata's misstatement of income and expenses and false financial statements.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Teradata's financial condition and results of operations, and to correct promptly any public statements issued by Teradata which had become materially false or misleading.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Teradata disseminated in the marketplace during the Class Period concerning Teradata's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Teradata to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Teradata within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Teradata securities.

68.     Each of the Individual Defendants, therefore, acted as a controlling person of Teradata.  By reason of their senior management positions and/or being directors of Teradata, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Teradata to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Teradata and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Teradata.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: June 14, 2024                              Respectfully submitted,

                                                                POMERANTZ LLP

                                                                */s/ Jennifer Pafiti*
                                                                Jennifer Pafiti (SBN 282790)
                                                                1100 Glendon Avenue, 15th Floor
                                                                Los Angeles, California 90024
                                                                Telephone: (310) 405-7190
                                                                jpafiti@pomlaw.com

                                                                POMERANTZ LLP
                                                                Jeremy A. Lieberman

28

(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS