UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT OSTRANDER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>TERADATA CORPORATION, *et al.*,<br><br>Defendants. | Case No. 24-cv-01034-BAS-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING BRIAN JURKO'S MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE CO-LEAD COUNSEL (ECF No. 3); AND**<br><br>**(2) DENYING AS MOOT VINCENT OSTRANDER'S MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD COUNSEL (ECF No. 4)** |

This case is a putative securities class action brought on behalf of all persons who purchased or otherwise acquired Teradata Corporation securities between February 13, 2023, and February 12, 2024. (Compl. ¶ 1, ECF No. 1.) The Complaint alleges Teradata and its executive officers made false or misleading statements about the company's

financials, causing significant losses to class members in violation of the Securities Exchange Act of 1934. (*Id.* ¶¶ 1, 5.)

Two related motions are pending. First, Brian Jurko moves for appointment as lead plaintiff and approval of co-lead counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Jurko's Mot., ECF No. 3.) Second, Vincent Ostrander likewise moves for appointment as lead plaintiff and approval of lead counsel. (Ostrander's Mot., ECF No. 4.) The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Jurko's Motion and **DENIES AS MOOT** Ostrander's Motion.

## I. BACKGROUND

Teradata "provides a connected multi-cloud data platform for enterprise analytics." (Compl. ¶ 2.) Defendant Stephen McMillan is Teradata's President and Chief Executive Officer. (*Id.* ¶ 18.) Defendant Claire Bramley is Teradata's Chief Financial Officer. (*Id.* ¶ 19.)

To measure the company's performance, Teradata uses Total Annual Recurring Revenue ("ARR"). This metric is "the annual value at a point in time of all recurring contracts, including subscription, cloud, software upgrade rights, and maintenance" agreements. (Compl. ¶ 23.) Therefore, Teradata's Total ARR hinges on "the number of customer transactions the Company is able to close in that period." (*Id.* ¶ 24.)

In February 2023, Teradata issued a press release stating its public cloud "ARR is expected to increase in the range of 53% to 57% year-over-year," and the company's "Total ARR is expected to increase in the range of 6% to 8% year-over-year." (Compl. ¶ 4.) However, the Complaint alleges Teradata "overstated its ability to close customer transactions within their intended timeframes" and "failed to timely close several customer transactions that it had factored into its outlook for 2023 ARR growth." (*Id.* ¶ 5.) The CFO later reported that "an eight-figure deal" could potentially get pushed into the next quarter, which could put Teradata "towards the low end or slightly below the range of cloud

ARR that [it] previously gave." (*Id.* ¶ 6.)  This news led to Teradata's stock falling 6.24%. (*Id.* ¶ 7.)

Then, in February 2024, Teradata released its financial results for the prior year. (Compl. ¶ 8.)  The company's public cloud ARR "increased by only 48% and total ARR increased by only 6% . . . falling well short of the Company's previously issued expectations for these performance metrics." (*Id.*)  Teradata's CEO explained that "there was a handful of large deals that slipped out of [the reporting year] and each were worth $2 million or more of cloud ARR growth." (*Id.* ¶ 9.)  "On this news, Teradata's stock price fell $10.57 per share, or 21.66%." (*Id.*)

In June 2024, Ostrander filed this putative class action alleging the precipitous decline in Teradata's stock price was caused by Defendants' purported violations of the Exchange Act.  (Compl. ¶¶ 54–69.)  The Court must now determine a lead plaintiff and approve lead counsel under the PSLRA.

## II.  ANALYSIS

Two putative class members filed Motions to Appoint Lead Plaintiff and Approve Lead Counsel on the same day: Brian Jurko (ECF No. 3) and Vincent Ostrander (ECF No. 4).  Ostrander later filed a Notice of Non-Opposition to Jurko's competing Motion.  (ECF No. 5.)  Ostrander explains that after reviewing Jurko's Motion, "it appears that Ostrander does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA.'" (ECF No. 5.)  The Court appreciates this concession and focuses the analysis on Jurko's Motion.

### A.   Lead Plaintiff

Under the PSLRA, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  There is a rebuttable presumption that the most adequate plaintiff is a person who: (1) has either filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal

1 | Rule of Civil Procedure 23, particularly the typicality and adequacy requirements. *Id.* §
2 | 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The
3 | presumption may be rebutted upon proof that the most adequate plaintiff "will not fairly
4 | and adequately protect the interests of the class" or "is subject to unique defenses that
5 | render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-
6 | 4(a)(3)(B)(iii)(II).

As the unopposed movant in this case, the Court finds that Jurko meets the PSLRA's three criteria for appointment as lead plaintiff. First, Jurko timely filed his Motion and submitted the requisite sworn certification. (Jurko's Mot. 4:16–27; Prongay Decl. ¶ 2, Ex. B, ECF No. 3-4.)

Second, Jurko alleges he purchased 425 shares of Teradata during the class period and suffered a loss of approximately $4974.49. (Prongay Decl. Exs. B, C.) By comparison, Ostrander's Motion alleges he purchased 225 shares and suffered a loss of approximately $1,529. (ECF No. 4-3.) Thus, as Ostrander's Non-Opposition highlights, Jurko demonstrates the highest financial stake between the two moving class members.

Third, Jurko satisfies the requirements of Federal Rule of Civil Procedure 23, including the typicality and adequacy requirements. *See In re Cavanaugh*, 306 F.3d at 730. Jurko represents that his securities claims are typical to those of the proposed class—every class member purchased Teradata securities during the class period and suffered losses due to Defendants' alleged misrepresentations and omissions. (Jurko Mot. 6:18–26; *see also* Prongay Decl. Ex. B.) Jurko also represents that his interests are aligned with the putative class—there is no evidence of antagonism or conflict, the amount of loss gives him a sufficient stake in the outcome of the litigation, and he commits to protecting the interests of the class. (Jurko Mot. 6:1–18; *see also* Prongay Decl. Ex. B.)

Accordingly, the Court finds that Jurko makes the preliminary showing under the PSLRA and is entitled to the presumption of being the most adequate plaintiff. Aside from Ostrander's Non-Opposition, the Court has received no other response to Jurko's request. Therefore, the Court grants Jurko's Motion for Appointment as Lead Plaintiff.

### B. Lead Counsel

Under the PSLRA, the court must appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Although the appointment is subject to court approval, the lead plaintiff chooses the lead counsel for the class. It "is not a beauty contest; the district court has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule." *In re Cavanaugh*, 306 F.3d at 732; *see also Kim v. Advanced Micro Devices*, Inc., No. 5:18-CV-00321-EJD, 2018 WL 2866666, at *2 (N.D. Cal. June 11, 2018) (explaining the court will generally accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class").

Jurko has selected (1) Glancy Prongay & Murray LLP and (2) Holzer & Holzer LLC as co-lead counsel for the putative class. No parties have objected to Jurko's selection of these firms as lead counsel, and the Court is unaware of any need to appoint different counsel to protect the interests of the class. The Court has reviewed the firms' and attorneys' resumes and is satisfied with Jurko's selection of counsel. (*See* ECF Nos. 3-6, 3-7.) Hence, Court grants Jurko's Motion to Approve Co-Lead Counsel.

### III. CONCLUSION

In light of the foregoing, the Court **GRANTS** Jurko's Motion to Appoint Lead Plaintiff and Lead Co-Counsel under the PSLRA (ECF No. 3). The Court **APPOINTS** Brian Jurko as Lead Plaintiff. Further, the Court **APPROVES** (1) Glancy Prongay & Murray LLP and (2) Holzer & Holzer, LLC as Co-Lead Counsel for the putative class.

Further, the Court **DENIES AS MOOT** Ostrander's Motion to Appoint Lead Plaintiff and Approve Lead Counsel (ECF No. 4). Finally, counsel for Defendants and Co-Lead Counsel for Plaintiffs shall meet and confer regarding the schedule for filing an amended complaint and any motion to dismiss. A joint motion proposing this schedule must be filed no later than **October 18, 2024**.

**IT IS SO ORDERED.**

**DATED: October 4, 2024**

Hon. Cynthia Bashant
United States District Judge