UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT OSTRANDER, Individually and on Behalf of All Others Similarly Situated,<br>Plaintiff,<br>v.<br>TERADATA CORPORATION, et al.,<br>Defendants. | Case No.: 3:24-cv-01034-CAB-MSB<br>**ORDER GRANTING MOTION TO DISMISS**<br>**[Doc. No. 24]** |

On December 6, 2024, Lead Plaintiff Brian Jurko[1] filed an amended class action complaint against Defendants Teradata Corporation ("Teradata"), Stephen McMillan (then Chief Executive Officer), and Claire Bramley (then Chief Financial Officer), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). [Doc. No. 19.] On February 4, 2025, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). [Doc. No. 24.] For the reasons below, the Court **GRANTS** the motion to dismiss.

[1] On October 7, 2024, the Court granted class member Brian Jurko's motion to be appointed lead Plaintiff and denied class member Vincent Ostrander's same motion.

## I. BACKGROUND

The Court summarizes the core facts, which it takes as true. *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). Plaintiff alleges that San Diego-based Teradata is an enterprise software company that develops and sells database analytics software. [Doc. No. 19 ¶¶ 2, 19.] At its inception, Teradata pursued an on-premises ("on-prem") model and housed private data centers at the customer's facility. [*Id.* at ¶ 2.] But as the market shifted towards cloud-based data storage, Teradata developed a cloud-based business model with pricing tied to actual customer consumption. [*Id.* at ¶ 3.]

Teradata made a strategic effort to migrate its customers from on-prem subscriptions to cloud subscriptions. [*Id.* at ¶¶ 3–4.] To measure its financial performance, Teradata utilized a metric it called total annual recurring revenue ("ARR"): the annual value at a point in time of a broad set of recurring contracts. [*Id.* at ¶ 5.] According to Plaintiff, the Total ARR metric was determined in significant part by the number of customer transactions Teradata closed during a set period. Total ARR could be further broken into public and private categories, such as Public Cloud ARR, which only included contracts from public cloud implementations. [*Id.*]

The class period begins on February 13, 2023 when Teradata announced its fiscal year 2022 financial results and provided its 2023 outlook in a press release. [*Id.* at ¶ 6.] The press release contained ARR projections, that "Public cloud ARR is expected to increase in the range of 53% to 57% year-over-year" and "Total ARR is expected to increase 6% to 8% year-over-year." [*Id* at ¶ 36.] Plaintiff claims that, hidden from investors, significant on-prem customers would not transition to Teradata's cloud-based data storage. [*Id.* at ¶ 7.] Plaintiff alleges numerous false and/or misleading statements scattered throughout the class period. For example, Plaintiff identifies an earnings call on August 7, 2023 in which Defendant Bramley explained that the company saw a higher level of deal scrutiny but was not seeing deals disappear. [*Id.* at ¶ 43.] Later, at a December 7, 2023 technology conference, she confirmed that at least one deal could be pushed out of Q4 2023. [*Id.* at ¶ 44.]

On February 12, 2024, Teradata announced its year-end results for 2023 after markets closed. [*Id.* at ¶ 47.] The company indicated that Public ARR grew by 48%, short of the Company's previously announced 53%–57% outlook. [*Id.*] It also announced that Total ARR grew 6%, which fell within the 6–8% outlook. [*Id.*] In explaining this shortfall, Defendant McMillan referenced "deal timing issues" and a "handful of large deals that slipped out of December . . . ." [*Id.* at ¶ 48.] He also indicated that the company expected "erosion" (decrease in customer spend)[2] of a "few large" on-premises relationships that may affect ARR. [*Id.* at ¶ 50.] He further indicated that the company knew about two major erosions for "some time" but that those were factored into 2024 goals and would be for 2025 as well. [*Id.*] Shortly thereafter, numerous analysts downgraded Teradata's stock, referencing the erosions. [*See id.* at ¶ 54.] In March and June of 2024, Defendant Bramley indicated that the company expected some outsized erosions for many years. [*Id.* at ¶ 52–53.]

According to Plaintiff, former Teradata employees confirm that Defendants knew about the slipping deals during the class period, and that such erosion was common. [*Id.* at ¶ 61.] For example, Confidential Witness No. 2, employed as a Senior Director during the class period, allegedly blamed Teradata's refusal to invest in its infrastructure as contributing to a competitive disadvantage. [*Id.* at ¶ 62.] Confidential Witness No. 3, allegedly a Senior Enterprise Account Executive in the relevant period, claimed that Teradata failed to close deals because its product features did not work with customers' technological environments. [*Id.* at ¶ 63.]

Plaintiff asserts that several statements made from February 13, 2023 to December 7, 2023 are materially false and misleading in violation of Sections 10(b) and 20(a) of the Exchange Act. Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. No. 24.]

---

[2] Plaintiff quotes Defendant Bramley who defines "erosion" as a reduction in what a customer spends with Teradata. [Doc. No. 19 ¶ 52.]

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Section 10(b) of the Exchange Act bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)). "Section 20(a) of the Exchange Act imposes secondary liability on controlling persons involved in a primary Section 10(b) violation." *In re: CCIV / Lucid Motors Sec. Litig.,* 110 F.4th 1181, 1184 (9th Cir. 2024).

To assert a claim under Section 10(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant [(falsity)]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citation omitted). Plaintiffs alleging Section 10(b) violations are subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). These requirements at the 12(b)(6) stage have been characterized as "formidable." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

To properly allege falsity under the PSLRA, "a securities fraud complaint must [] 'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading.'" *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th

Cir. 2012) (quoting 15 U.S.C. § 78u–4(b)(1)). To adequately plead scienter, "the complaint must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)(A)).

## III. DISCUSSION

Plaintiff specifically identifies the alleged materially false and misleading statements in the amended complaint. This pleading requirement is satisfied, and the Court does not reproduce them in full here.[3]

### A. Forward-Looking Statements

Defendants claim that most of the statements Plaintiff challenges are forward-looking and thus cannot be a basis for Section 10(b) liability. [Doc. No. 24-1 at 13.] A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). "Under the PSLRA's 'Safe Harbor' Provision, "forward-looking statements' are not actionable as a matter of law if they are identified as such and accompanied by 'meaningful cautionary statements identifying important facts that could cause actual results to differ materially from those in the forward looking statement.'" *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1060 (N.D. Cal. 2019) (citing 15 U.S.C. § 78u–5(c)(1)(A)(i)).

Forward-looking statements that are "identified as such and accompanied by meaningful cautionary statements" are "not actionable regardless of the plaintiff's showing

---

[3] Defendants request that the Court take judicial notice of Defendants' Exhibits 1–17. [Doc. No. 24-2.] Plaintiff does not oppose Defendants' request for judicial notice. Given that these exhibits, incorporated into the amended complaint, represent publicly disseminated documents in the form of regulatory filings and press releases from Teradata, the Court judicially notices the exhibits. *See* Fed. R. Evid. 201; *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Courts in the Ninth Circuit routinely take judicial notice of press releases."); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [the court] may consider materials incorporated into the complaint[.]").

of scienter." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). "Alternatively, if a forward-looking statement is not identified as a forward-looking statement or is unaccompanied by meaningful cautionary statements, then the statement is actionable only if the plaintiff proves that the forward-looking statement 'was made with actual knowledge . . . that the statement was false or misleading.'" *McGovney*, 367 F. Supp. at 1060 (citing 15 U.S.C. § 78u–5(c)(1)(B)).

Defendants argue that the statements identified in ¶¶ 67, 74, 76, 78, 79, 82, 84, 85, 87, 89, 90, 91, 92, and 94 of the amended complaint qualify as forward-looking statements because they are "classic growth and revenue projections, which are forward-looking on their face." *Intuitive Surgical*, 759 F.3d at 1058. The Court agrees.

"The PSLRA's safe harbor is designed to protect companies and their officials from suit when optimistic projections of growth in revenues and earnings are not borne out by events. But the safe harbor is not designed to protect companies and their officials when they knowingly make a materially false or misleading statement about current or past facts." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017). Many of the challenged statements here fall squarely within the category of "optimistic" growth projections, such as:

> For the full year 2023, Public Cloud ARR is expected to increase in the range of 53% to 57% year-over-year. Total ARR is expected to increase in the range of 6% to 8% year-over-year.

[Doc. No. 19 ¶ 74.]

This statement, core to Plaintiff's allegations, is a "classic growth and revenue projection[], which [is] forward-looking on [its] face." *Intuitive Surgical*, 759 F.3d at 1058. The statement is essentially duplicated in ¶¶ 78, 82, 84, 87, 89, and 94, and the same logic applies. Plaintiff also flags the following statement from a May 4, 2023 press release:

> We are excited for the year ahead and are on track to achieve all elements of our annual outlook.

[Doc. No. 19 ¶ 78.] This type of language is also found in ¶¶ 67, 79, 90, 91, and 92. The Court takes instruction from the Ninth Circuit that any announced objective for future operations "necessarily reflects an implicit assertion that the goal is achievable based on current circumstances," and that "an unadorned statement that a company is 'on track' to achieve an announced objective, or a simple statement that a company knows of no issues that would make a goal impossible to achieve, are merely alternative ways of declaring or reaffirming the objective itself." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). The May 4, 2023 press release fits this very profile: "on track" merely refers to the forward-looking projections referenced in the same press release, or the "annual outlook" of ARR growth. [Doc. No. 19 ¶ 78.]

The Court next looks to Defendant McMillan's statement that "a lot of our cloud growth is actually going to be funded from that migration from on-prem to the cloud." [*Id.* at ¶ 76.] The Court finds this statement is also forward-looking because it speaks to "the plans and objectives of management for future operations, including plans or objectives relating to [Teradata's] products or services[.]" *See* 15 U.S.C. § 78u-5(i)(1)(B).

**B. Cautionary Statements**

To fall within the safe harbor, forward-looking statements must be "identified as such and accompanied by meaningful cautionary statements." *In re Cutera*, 610 F.3d at 1112. Cautionary statements are "meaningful" where they "identify[] important factors that could cause actual results to differ materially from those in the forward-looking statement[.]" *Intuitive Surgical*, 759 F.3d at 1058.

Teradata identified the above forward-looking statements as such. For the statements derived from earnings calls, Teradata explained that forecasts were forward-looking. [*See, e.g.*, Doc. No. 24-8 at 3; Doc. No. 24-9 at 3; Doc. No. 24-10 at 4.] Teradata did the same for its filings with the SEC. [*See, e.g.*, Doc. No. 24-4 at 27; Doc. No. 24-5 at 5.] Defendants also provided meaningful cautionary language that covered the statements at issue. In the Form 10-K for the fiscal year ending on December 31, 2022, Teradata detailed multiple specific risk factors and delays that could make earnings projection

difficult. [Doc. No. 24-4 at 15–26; *see, e.g.*, Doc. No. 24-10 at 4, Q2 2023 Earnings Call Transcript ("These risk factors are described in today's earnings release and in our SEC filings, including our most recent Form 10-K and in the Form 10-Q for the quarter ended June 30, 2023.")] Indeed, Teradata referred to this document in every earnings release and call at issue. [*See, e.g.*, Doc. No. 24-11 at 4, November 6, 2023 Earnings Call Transcript (referencing risk factors in the "most recent Form 10-K").]

Plaintiff broadly labels this cautionary language as "boilerplate" but fails to identify a single risk factor that falls short of the required standard for cautionary language. [Doc. No. 26 at 24.] It is clear from the Form 10-K that the cautionary language provided contains considerable detail addressing the very issue Plaintiff alleges Defendants omitted—that there was a "risk of significant sales elongation and delays," [Doc. No. 19 at 11]:

> The long sales cycle for our products also makes it difficult to predict the quarter in which sales will occur. Delays in sales could cause significant variability in our results for any particular period and could impact any financial guidance and forecasts that we may provide.

[Doc. No. 24-4 at 16.]

**C. Corporate Puffery**

Defendants also claim that multiple statements are non-actionable corporate puffery. Corporate puffery is "vague, generalized assertions of corporate optimism or statements of mere puffing [that is] not actionable . . . under federal securities laws." *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 994 (N.D. Cal. 2017).

The Court finds the following challenged statements to be classic examples of corporate puffery: ¶¶ 76 ("we have that tight integration with our customers so that we know . . . how they plan to move that spend from on-prem to a cloud environment"), 78 (we "are on track to achieve all elements of our annual outlook"), 85 ("good coverage as we look forward" and "full confidence in our full year numbers"), 90 ("confident that . . . ARR dollar growth will increase [] and will be within our annual outlook ranges"), 91

(“good confidence in the goals that we previously laid out”), 92 (“we do have good visibility . . . into those deals” and “[w]e’re confident in the guidance that we’ve given for Q4”). *See Fadia v. FireEye, Inc.*, No. 5:14-CV-05204-EJD, 2016 WL 6679806, at *9 (N.D. Cal. Nov. 14, 2016) (finding statements including “[s]ales cycles have been very consistent,” “[w]e think the pipeline and outlook looks good,” and that the company has “very strong . . . relationships” with partners and addresses conflicts with them, as non-actionable statements of corporate optimism).

Plaintiff argues that viewed in the context of Teradata’s “critical shift in business strategy, [which] heighten[ed] investors’ focus on Teradata’s customer composition, behavior, and operating conditions,” these statements are material misrepresentations. [Doc. No. 26 at 25.] The Court disagrees. Each of the relevant statements are vague and relate to general, subjective corporate optimism about the 2023 guidance. There is little difference between the statements identified here and the Ninth Circuit’s previous characterizations of non-actionable puffery, which include:

- We’re doing well and I think we have a great future;
- Business will be good this year . . . We expect the second half of fiscal 1992 to be stronger than the first half, and the latter part of the second half to be stronger than the first;
- Everything is clicking [for the 1990s] . . . New products are coming in a wave, not in a trickle . . . Old products are doing very well; and
- I am optimistic about [the company’s] performance during this decade.

*In re Syntex Corp. Sec. Litig.,* 855 F. Supp. 1086, 1095 (N.D. Cal. 1994), *aff’d,* 95 F.3d 922 (9th Cir. 1996) (quotation marks omitted) (alterations in original).

Defendants also contest that the statements in ¶¶ 69, 71, 72 and 96 are puffery. The Court disagrees. These statements include the following language, which is too specific to qualify as vague, subjective optimism:

- We are not seeing any significant changes to customer behavior. We are seeing a little bit of scrutiny, but . . . that’s not pervasive (¶ 69);
- Our on-prem subscription business remained steady even in light of [] migrations to the cloud (¶ 71);

- From a renewals perspective, the team landed a great quarter from [] renewals and expansion of our on-prem business . . . our on-prem ARR stayed very steady (¶ 72); and
- [W]e've got one particular deal that potentially could be pushed out of Q4" and "put us towards the low end or slight below the range for cloud ARR that we previously gave. (¶ 96).

*See RB-TPG San Jose LLC v. Tyco Fire Prods., LP*, No. 17-CV-03655 NC, 2018 WL 4538785, at *3 (N.D. Cal. Sept. 21, 2018) (finding the statements that "troubleshooting and repair is fast and economical" and that a system "eliminates virtually all [] vulnerabilities" to be too specific to qualify as puffery). Defendants additionally challenge that these statements are not false or misleading, which the Court examines below.

**D. As Pleaded, The Remaining Statements Are Not False or Misleading**

Finally, the Court considers whether the remaining statements in ¶¶ 68, 69, 71, 72, 80, 86, and 96, which are neither forward-looking nor puffery, can give rise to a securities fraud claim. Defendants argue that Plaintiff fails to satisfy the first prong of pleading a false or misleading statement. "Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). "Even if a statement is not false, it may be misleading if it omits material information." *Id.* at 1008–09. A material omission is misleading where it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exist[s]." *See Brody*, 280 F.3d at 1006.

Looking to ¶ 68, Plaintiff's basic theory is that the following statement was materially false or misleading because it allegedly failed to disclose to investors that "deals . . . were taking longer to close" and "that Teradata was not on track to achieve ARR growth":

> We continue to keep a close eye on the macroeconomic environment and are starting to see increased scrutiny on enterprise spend. It is not yet pervasive, but it has influenced our thinking to be prudently conservative in our 2023 outlook.

The problem for Plaintiff is that this statement complements the erosion that Plaintiff claims was concealed to investors. "An actionable omission claim arises only when disclosure is necessary . . . to make the statements made, in light of the circumstances under which they were made, not misleading." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (quotation marks omitted). This statement is not inconsistent with the later reality that deal erosion led to lower ARR. Indeed, Defendants' vague statement about the macroeconomic environment did not create any impression specifically concerning the timing of deals or ARR growth. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (omission must "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists").

Plaintiff makes the same omission challenge to the statements in ¶¶ 69 and 86. In the former, Defendant Bramley remarked on February 13, 2023 that Teradata was not seeing any "significant" changes to customer behavior but was "seeing a little bit of scrutiny." She also stated that there was "volatility" which caused Teradata to be "conservative" with its annual financial outlook. Plaintiff acknowledges that Defendant's statement "publicly recognized intensified client scrutiny and correspondingly elongated deal cycles," but he takes issue with the extent of scrutiny disclosed. [Doc. No. 26 at 17.] In the ¶ 86 statement, Defendant Bramley said on August 7, 2023 that Teradata was seeing a "higher level of scrutiny on deals, but [that] . . . deals [were not] disappear[ing] or mov[ing] away because of the macro."

Plaintiff argues that he has pled facts showing *pervasive* customer scrutiny of deals and elongated deal cycles, which consist of former Teradata employees stating there was erosion and deals that did not close on projected dates because of software issues and unrealistic timelines for launching new features. [*See id.*] These facts, however, are not "necessarily inconsistent" with statements that there was customer scrutiny and volatility, but no *significant* changes to customer behavior nor deals disappearing. *See Kairalla v. Advanced Med. Optics, Inc.*, No. CV-07-05569 SJOPLAX, 2008 WL 2879087, at *3 (C.D.

Cal. June 6, 2008) ("Statements are not misleading where they are 'not necessarily inconsistent with the underlying true facts.'"). Moreover, Plaintiff's allegations of missed closing dates and erosion are not contemporaneous with the challenged statements and thus do not show how they were false or misleading at the time they were made in February and August of 2023. *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2018 WL 2972528, at *4 ("[A] securities fraud complaint 'must state with particularity' how and why each statement was false *at the time the statement was made*" (emphasis added)).

Regarding the statements identified in ¶¶ 71, 72, and 80, Plaintiff alleges (1) Defendant McMillan misled by saying in 2023 that on-prem business "remained steady" when discussing 2022 financial results and (2) Defendant Bramley misled by saying Teradata was "not currently see[ing] any other material headwinds" as of May 4, 2023. To show how these statements are misleading, Plaintiff points to Defendant McMillan's statement the following year on February 12, 2024 that Teradata expected a "few large on-prem" erosions in 2024 which they knew about for multiple years. [Doc. No. 19 ¶ 50.] This is insufficient to show that the statements are false or misleading, however.

In Defendant McMillan's February 12, 2024 statement, he notes specifically that Teradata knew of two major customers who "inten[ded] to erode [their] on-prem capability" based on decisions made three years prior unrelated to Teradata's new cloud-first strategy. The fact that Defendants knew two customers intended to decrease their on-prem spending at some point, which eventually occurred in 2024, does not contradict, nor is it necessarily inconsistent with, a 2023 statement that on-prem business remained steady in fiscal year 2022 or that Teradata generally was not seeing "material headwinds" as of May 4, 2023. To be sure, the fact that two major customers intended to eventually decrease their spending with Teradata may be material, but "not all material information needs to be disclosed. Disclosure is only required 'when necessary to make . . . statements made . . . not misleading.'" *Water Island Event-Driven Fund v. MaxLinear, Inc.*, No. 3:23-CV-01607-CAB-VET, 2025 WL 1940189, at *2 (S.D. Cal. July 15, 2025) (quoting *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022)). Moreover, stating

that on-prem business was steady does not indicate that Teradata had not seen, or would not see, *any* decrease in certain customers' spending.

Plaintiff's reliance on *Schueneman v. Arena Pharmaceuticals, Inc.* falls short. 840 F.3d 698 (9th Cir. 2016). In that case, the Ninth Circuit held that a bio-pharmaceutical company had a duty to disclose a study showing that a certain drug caused cancer in rats when they stated that all animal studies supported the drug's approval. *See id.* at 707–08. In contrast, Plaintiff does not offer any alleged contemporaneous facts which similarly and flatly contradict the statements, at the time they were made, that Teradata's on-prem business was steady *in* 2022 and there were no material headwinds (which is a vague business term) *in* 2023. As pled, the Court finds Plaintiff fails to sufficiently plead that Defendants' statements in ¶¶ 71, 72, and 80 are false or misleading.

The final alleged misleading statement is from December 7, 2023 when Defendant Bramley stated that Teradata was seeing "deals potentially elongating in their life cycle" and that they could be "pushed out of Q4" 2023. [Doc. No. 19 ¶ 96.] She added that this "could put [Teradata] toward the low end or slightly below the range for cloud ARR that [they] previously gave." [*Id.*] Plaintiff asserts that Defendant Bramley's statement was misleading because it failed to disclose to investors, again, that "deals for its cloud subscription were taking longer to close and [] as a result, Teradata was not on track to achieve the ARR growth that it told the market to expect." This statement, however, disclosed those very facts. Indeed, Defendant Bramley expressly notes deals were "elongating in their life cycle" which is understood as corporate speak for taking longer to close, and that Teradata may be "below the range for cloud ARR" growth that it previously predicted. Defendant's statement did not create any impression that differed from reality. *See Brody*, 280 F.3d at 1006.

At bottom, the amended complaint repeatedly targets flexible characterizations—such as that the on-prem business "remained steady" or that there were not "significant" changes to customer behavior—to allege that later disclosures revealed those statements were false and/or misleading. But Plaintiff fails to plead contemporaneous facts showing

that these "statements were false or misleading at the time they were made." *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 876.

**E. Scienter**

The Court declines to address arguments related to scienter at this juncture but may do so upon any amendment.

**F. Section 20(a) Claim**

Plaintiff also asserts Section 20(a) claims against the individual Defendants, which imposes control person liability for Section 10(b) violations. *See Weston Fam. P'ship LLLP*, 29 F.4th at 623. As Plaintiff's Section 10(b) claims fail, so do their Section 20(a) claims. *See id.* (holding that control person liability cannot survive where plaintiffs do not adequately plead a primary violation of Section 10(b)).

**IV. CONCLUSION**

As Plaintiff fails to adequately plead a Section 10(b) or Section 20(a) claim against any of the Defendants, the Court **GRANTS** the motion to dismiss. [Doc. No. 24.] The case is **DISMISSED without prejudice**. Plaintiff may amend his complaint by **October 10, 2025**. Plaintiff should ensure any amended complaint complies with Civil Local Rule 15.1.

It is **SO ORDERED**.

Dated: September 26, 2025

Hon. Cathy Ann Bencivengo
United States District Judge